Brianne C. McClafferty
Kathryn M. Brautigam
Holland & Hart LLP
401 North 31st Street, Suite 1500
P.O. Box 639
Billings, MT 59103-0639
Telephone:  (406) 252-2166
bcmcclafferty@hollandhart.com
kmbrautigam@hollandhart.com

ATTORNEYS FOR PLAINTIFF

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | | |
|---|---|---|
| JONATHAN CUSHMAN CPA LLC, | ) ) | No. _____ |
| Plaintiff, | ) ) | |
| vs. | ) ) | COMPLAINT |
| MICHELLE BABCOCK, | ) ) | |
| Defendant. | ) ) | |

Jonathan Cushman CPA, LLC, a Maine limited liability company

("Cushman") makes the following Complaint for Relief against Defendant

Michelle Babcock ("Babcock").

**PARTIES, JURISDICTION AND VENUE**

1.      Cushman is a Maine limited liability company with its principal place

of business located at 35 Old Mill Road, Unit 6, South Berwick, ME 03908.

Cushman transacts business in Alaska, Arizona, California, Maine, North Carolina,

New Mexico, Oklahoma, and Washington.  None of the limited liability company members are residents or citizens of Montana.  Both individual members are residents of Maine.

2.      On information and belief, Babcock is an adult citizen residing in Kalispell, Montana.  At all material times leading up to her resignation, Babcock was a Senior Accountant employed by Cushman.

3.      On information and belief, at all material times leading up to her resignation, Babcock performed work for Cushman at 69 Konley Drive, Kalispell, MT 59901.

4.      Babcock resigned from Cushman on or about March 18, 2022.  On information and belief, Babcock is currently self-employed, serving at least one client with the same services she performed for Cushman.

5.      The Court has subject matter jurisdiction over this matter pursuant to 18 U.S.C. § 1836(c) because the case concerns an issue arising under federal law and 28 U.S.C. § 1332 on the basis of diversity of citizenship and on the grounds that the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

6.      On information and belief, this Court has personal jurisdiction over Babcock because:

      a.     Babcock is a person found within the State of Montana pursuant to Mont. R. Civ. P. 4(a)(1) and 4(b)(1); and

      b.     Babcock has had material, substantial, systematic, and continuous contacts with, and regularly conducts her accounting business in, the State by transacting business within Montana and this District.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2). Divisional venue is proper in the Missoula Division pursuant to L.R. 3.2(b)(1)(A) and (C) of the Local Rules of Procedure of the United States District Court for the District of Montana, because the events giving rise to the claims occurred within the Missoula Division, specifically, upon information and belief, Kalispell Montana.

## GENERAL ALLEGATIONS

8.     Cushman realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

9.     Cushman is comprised of an accomplished and respected team of professionals who provide accounting, auditing, and consulting services to governments and governmental entities. Cushman is proficient in many Governmental Accounting Software Applications. It provides both accounting consulting services and audit services and specializes in Governmental Accounting Standards Board (GASB) implementation.

10.    Cushman has engaged clients and worked on projects throughout the United States including the states of Alaska, Arizona, California, Maine, North Carolina, New Mexico, Oklahoma, and Washington.

11.    Cushman has invested significant time and resources to develop contacts, clients, and employees.  To protect these and other of its investments, Cushman requires employees to agree to confidentiality, noninterference with business relations, and non-competition restrictions as a condition of their employment.

12.    Cushman specifically negotiated *inter alia* confidentiality, noninterference with business relations, and non-competition restrictions as conditions of Babcock's employment with Cushman.

13.    Cushman offered, and Babcock accepted, a position with Cushman on or about November 20, 2018.  On or about that date, Cushman and Babcock executed and entered into a written employment agreement.  A true and correct copy of the fully executed Employment Agreement, and its amendment, is attached hereto as **Exhibit A**, and fully incorporated herein by reference (the "Employment Agreement").

14.    By the terms of the Employment Agreement, and in consideration of Babcock's employment at Cushman, which Babcock acknowledged as good and

4

valuable consideration, Babcock agreed to a number of obligations and duties both during and for a limited time after her employment with Cushman.

15.    Cushman took steps to maintain the confidentiality and proprietary nature of its business trade secrets.  As a condition of her employment, Babcock agreed that she would not, without prior written consent of Cushman, disclose to any person not employed by Cushman, any proprietary information of Cushman. Babcock agreed that she would protect the proprietary and confidential information, including plans and strategies regarding suppliers, pricing, marketing, customers, short term and long-range plans, advertising, and sales objectives and performance, as well as any other nonpublic information, the nondisclosure of which may provide a competitive economic advantage to Cushman.  Cushman required similar agreements from its other employees who received confidential and proprietary information.

16.    Further, Babcock agreed and acknowledged that Cushman's client information was to be maintained and transmitted only on Cushman's computer equipment and only for the purpose of serving Cushman's clients as specified in Cushman's engagement letters with its clients.

17.    By the terms of Section 4.3 of the Employment Agreement and as a condition of her employment, Babcock agreed that during her employment and for three years after termination of her employment at Cushman, she would not,

5

without the prior written consent of Cushman, on her own behalf or on the behalf of any person, firm or company, directly or indirectly, attempt to influence, persuade or induce, or assist any other person in so persuading or inducing, any person, firm or company to cease doing business with, reduce its business with or decline to commence a business relationship with Cushman. Section 4.3 expressly applies to all clients of Cushman known to Babcock during her employment.

18.    The restrictive covenant in Section 4.3 is reasonable and limited in both time and scope.

19.    By the terms of Section 4.4 of the Employment Agreement, Babcock agreed to not directly compete with Cushman during her employment and for a period of three years following termination of her employment. This provision expressly prohibits Babcock from performing services, whether paid or unpaid, in any capacity, including as an officer, director, owner, consultant, employee, friend, agent or representative, where such services involve the marketing or performance of substantially similar duties or oversight responsibilities as those performed by Babcock during the 12-month period preceding Babcock's termination of employment with Cushman. By the terms of the Employment Agreement, Babcock also is prohibited from competing for the business of Cushman's clients.

20.    By the terms of the Employment Agreement, Babcock recognized that the non-competition restriction in Section 4.4 of the Employment Agreement was

reasonably necessary for the protection of Cushman's business interest. Specifically, Babcock recognized that her receipt and creation of proprietary information, and the substantial cost and value of said proprietary information warranted the non-competition restriction in Section 4.4 of the Employment Agreement.

21.    The restrictive covenant in Section 4.4 of the Employment Agreement is reasonable and limited in time and scope.

22.    By the terms of the Employment Agreement, Babcock agreed that a violation of the provisions of the noninterference with business relations (Section 4.3) and non-competition (Section 4.4) provisions within the Employment Agreement would cause irreparable injury to Cushman, and that monetary damages are likely inadequate.

23.    Babcock was fully compensated for her employment with Cushman.

24.    Cushman satisfied all of its obligations under the Employment Agreement.

25.    At no time did Babcock gain any right or interest in Cushman or its proprietary information.

26.    During her employment, Babcock performed the majority of her work for a single client (the "Primary Client").  Cushman trained her to perform the work needed by the Primary Client.

27.    Babcock voluntarily resigned from Cushman on or about March 18, 2022.

28.    Prior to Babcock's resignation, she forwarded, to her private email addresses, confidential client information and other proprietary information belonging to Cushman.  This occurred as late as March 17, 2022—the day before Babcock voluntarily left Cushman.  That information included, but was not limited to: (a) an Excel spreadsheet containing Cushman's Contact List; (b) emails to clients, including the Primary Client, containing proposals and information regarding those proposals that Babcock worked on while at Cushman; (c) audit request lists; (d) software login information; (e) Excel spreadsheets listing the Primary Client's financials (such as rate computations, actual direct cost base, etc.); (f) investment statements for a client; (g) client contact information; (h) the Primary Client's 2023 Indirect Cost Rate Proposal; and (i) notes specific to the Primary Client.

29.    When Babcock left her employment, she started her own business performing substantially similar duties and providing substantially similar services to those services she provided while employed by Cushman.  Babcock never obtained permission from Cushman to start said business. Without obtaining permission from Cushman, Babcock now also provides the same services that she provided to clients at Cushman to at least the Primary Client.

8

30.     Upon information and belief, while Babcock was still employed at Cushman, she made plans to leave Cushman and perform services for the Primary Client and took proprietary, confidential business trade secrets to assist in servicing the Primary Client for her own financial benefit.  Upon information and belief, Babcock has used the proprietary, confidential business trade secrets that she forwarded herself immediately before leaving her employment with Cushman to benefit herself to the detriment of Cushman.

31.     On information and belief, Babcock is still currently self-employed, serving clients with the same services she performed for Cushman, and including at least the Primary Client.

32.     As a result of Babcock's conduct leading up to the filing of this lawsuit and her continued misconduct, Cushman has suffered a substantial, adverse business impact, irreparable harm, significant damage to Cushman's client and customer relationships and goodwill in the marketplace, and significant financial damages, including lost revenue from the Primary Client.

33.     Babcock's continuing unlawful conduct threatens additional harm to Cushman.

## COUNT I
### (BREACH OF CONTRACT – SECTION 4.3 & 4.4 OF EMPLOYMENT AGREEMENT)

34.     Cushman realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

35.     The Employment Agreement between Cushman and Babcock is a valid and enforceable agreement supported by adequate consideration.

36.     The restrictive covenants within the Employment Agreement (Sections 4.3 and 4.4) are no broader in scope than necessary to protect Cushman's legitimate interests in its business and its sensitive, confidential, and proprietary information.  The restrictive covenants within the Employment Agreement are limited in time, were made in exchange for adequate consideration, and do not impose unreasonable burdens upon the employer, employee, or the public.

37.     Babcock was contractually prohibited from competing with Cushman during her employment and for a period of three years after terminating her employment with Cushman.

38.     Babcock was contractually prohibited from persuading or inducing, any person, firm or company to cease doing business with, reduce its business with or decline to commence a business relationship with Cushman for a period of three years after terminating her employment with Cushman.

39.     Babcock violated the Employment Agreement by directly competing with Cushman by offering on behalf of herself or her own business similar services to those she performed while employed at Cushman.  Specifically, Babcock violated Section 4.4 of the Employment Agreement.

40.     Babcock violated the Employment Agreement by persuading or inducing at least one client of Cushman to do business with her or her firm instead of Cushman.  Specifically, Babcock violated Section 4.3 of the Employment Agreement.

41.     Cushman has sustained, and will continue to sustain, damages as a result of Babcock's breaches of her duties in her Employment Agreement including past and future lost profits.

42.     Cushman has fully complied with all of its obligations under the Employment Agreement.

43.     All conditions precedent to the relief requested herein have been performed, have occurred, or have been waived.

44.     Babcock's acts alleged herein were performed without Cushman's consent.

45.     Babcock's breaches of her Employment Agreement are a direct and proximate cause of Cushman's damages, in an amount to be proven at trial.

11

46.     Babcock's conduct seeks to deprive Cushman of goodwill and lost revenue.  Cushman has suffered and will continue to suffer irreparable injury and harm.

## COUNT II
### (TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE)

47.     Cushman realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

48.     Cushman had existing and prospective business relationships with clients and customers and potential clients and customers.  Cushman had valid economic expectancies in relationships it had with clients and customers and potential clients and customers.

49.     Babcock had knowledge of the profitable relationships between Cushman and its clients and customers.  Babcock had knowledge of the services Cushman performed for its clients, including the Primary Client.  Babcock had knowledge of the strategies, plans and methods employed by Cushman.

50.     Cushman trained Babcock to provide accounting services to its clients, including the Primary Client, which Babcock took when she voluntarily left her employment.

51.     Upon information and belief, Babcock intentionally and willfully undermined and interfered with relationships between Cushman and its customers

and clients and potential customers and clients.  Upon information and belief, Babcock used proprietary and confidential information received or learned at Cushman to interfere with relationships between Cushman and its customers and clients and potential customers and clients.

52.    Upon information and belief, Babcock's conduct was calculated to cause damage to Cushman and its business.  Babcock's actions were performed with the unlawful purpose of causing damage or loss to Cushman, without right or justifiable cause on her part.

53.    Due to Babcock's actions, the relationships between Cushman and its current and potential clients and customers have been damaged.

54.    As a direct and proximate result of Babcock's tortious interference with Cushman's prospective economic advantage, Cushman has sustained, and will continue to sustain, damages.

55.    Babcock's conduct seeks to deprive Cushman of goodwill and lost revenue.  Cushman has suffered and will continue to suffer irreparable injury and harm.

## COUNT III

### (MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT)

56.    Cushman realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

57.    The federal Defend Trade Secrets Act creates a private, civil cause of action for owners of trade secrets that have been misappropriated "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  18 U.S.C § 1836(b)(1).

58.    Under the federal Defend Trade Secrets Act, misappropriation of a trade secret includes disclosure or use of a trade secret of another without express or implied consent by a person who at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was acquired under circumstance giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret, or derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret or limit the use of the trade secret.  18 U.S.C. § 1839(5).

59.    Under the federal Defend Trade Secrets Act, a trade secret includes all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if the owner thereof has taken reasonable measures to keep such information secret; and the information derives independent economic

14

value, actual or potential, from not being generally known to, and not being readily

ascertainable through proper means by, another person who can obtain economic

value from the disclosure or use of the information.  18 U.S.C. § 1839(3).

60.    Cushman is the owner of proprietary information constituting trade

secrets, including but not limited to plans and strategies regarding suppliers,

pricing, marketing, customers, hiring and terminations, employee performance and

evaluations, internal reviews and investigations, short term and long-range plans,

acquisitions and divestitures, advertising, information systems, sales objectives and

performance, as well as any other nonpublic information, the nondisclosure of

which may provide a competitive or economic advantage to the employer.

61.    These trade secrets are used in, and are intended for use in, interstate

commerce, specifically in the accounting services Cushman provides to its clients,

including the Primary Client that is based in Oklahoma.

62.    Babcock became aware of Cushman's trade secrets while under a duty

to maintain secrecy of the trade secrets during her employment with Cushman.

63.    Cushman took reasonable measures to keep the confidentiality of its

trade secrets, including confidentiality provisions in its agreements with

employees, and file storage that required employees to sign in with a password to

access files.  Access to trade secret materials was limited to those employees who

needed to use the information.

64.    The trade secrets derive independent economic value to Cushman's business.  Cushman has expended significant time and resources developing its trade secrets and the trade secret information is not readily ascertainable through proper means by competitors or other persons who would obtain a competitive advantage from the disclosure or use of the information.

65.    Babcock misappropriated trade secrets for her personal gain in violation of the federal Defend Trade Secrets Act when she forwarded the trade secrets from her Cushman email address to her private, personal email addresses and then used the trade secrets to perform services in direct competition with Cushman and with at least one of Cushman's clients.

66.    Cushman did not authorize Babcock to forward Cushman's proprietary information and trade secrets to Babcock's private email addresses. Cushman did not authorize Babcock to contact Cushman's clients or compete with Cushman.

67.    As a direct and proximate result of Babcock's disclosure of Cushman's proprietary information in violation of the federal Defend Trade Secrets Act, Cushman has sustained, and will continue to sustain, actual damages caused by misappropriation and unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.  18 U.S.C. § 1836(b)(3)(B)(i)(I)-(II).

68.     Because Babcock's misappropriation was willful and malicious, exemplary damages are proper here.  18 U.S.C. § 1836(b)(3)(C).

## COUNT IV

### (MISAPPROPRIATION OF TRADE SECRETS UNDER MONTANA'S UNIFORM TRADE SECRET ACT)

69.     Cushman realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

70.     Under Montana's Uniform Trade Secret Act, §§ 30-14-401, *et seq.*, misappropriation of a trade secret includes disclosure of or use of a trade secret of another without their express or implied consent by a person who at the time of the disclosure or use, knew or had reason to know, that the person's knowledge of the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use or derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.  Mont. Code Ann. § 30-14-402(2).

71.     A trade secret is information, including a device, method, technique, or process that derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.  Mont. Code Ann. § 30-14-402(4).  Cushman is the owner of proprietary

information constituting trade secrets, including but not limited to plans and strategies regarding suppliers, pricing, marketing, customers, hiring and terminations, employee performance and evaluations, internal reviews and investigations, short term and long-range plans, acquisitions and divestitures, advertising, information systems, sales objectives and performance, as well as any other nonpublic information, the nondisclosure of which may provide a competitive or economic advantage to the Employer.

72.    Babcock became aware of Cushman's trade secrets while under a duty to maintain secrecy of the trade secrets during her employment with Cushman. Cushman took reasonable measures to keep the confidentiality of its trade secrets, including confidentiality provisions in its agreements with employees, and file storage that required employees to sign in with a password to access files. Access to trade secret materials was limited to those employees who needed to use the information.

73.    The trade secrets derive independent economic value to Cushman's business. Cushman has expended significant time and resources developing its trade secrets and the trade secret information is not readily ascertainable through proper means by competitors or other persons who would obtain a competitive advantage from the disclosure or use of the information.

74.     Babcock misappropriated trade secrets for her personal gain in violation of Montana's Uniform Trade Secrets Act when she forwarded the trade secrets from her Cushman email address to her private, personal email addresses and then used the trade secrets to perform services in direct competition with Cushman and with at least one of Cushman's clients.  Cushman did not authorize Babcock to forward Cushman's proprietary information and trade secrets to Cushman's private email addresses.  Cushman did not authorize Babcock to contact Cushman's clients or compete with Cushman.

75.     As a direct and proximate result of Babcock's disclosure of Cushman's proprietary information in violation of Montana's Uniform Trade Secret Act, Cushman has sustained, and will continue to sustain, damages for the actual loss caused by misappropriation and unjust enrichment caused by misappropriation that is not taken into account in computing actual loss.  Mont. Code Ann. § 30-14-404(1).

76.     Because Babcock's misappropriation was willful and malicious, exemplary damages are proper here.  Mont. Code Ann. § 30-14-404(2).

## COUNT V
### (UNJUST ENRICHMENT)

77.     Cushman realleges and incorporates by reference all of the other paragraphs of this Complaint as if set forth in full herein.

19

78.     Cushman is informed and believes that Babcock has generated and enjoyed, or will generate and enjoy, profits and other ill-gotten gains as a result of the wrongful conduct alleged above.

79.     As a result of the wrongful conduct described herein, Cushman has been damaged and subjected to irreparable injury and Babcock has been unjustly enriched.

80.     Cushman is entitled to disgorgement of all ill-gotten gains, monies and profits and is entitled to the imposition of a constructive trust over all property or money in Babcock's control or possession as a result of her wrongful conduct.

### REQUEST FOR JURY TRIAL

81.     Cushman hereby requests trial by jury of all matters set forth in this Complaint that are properly so tried.

### PRAYER FOR RELIEF

WHEREFORE, Cushman demands judgment in its favor and against Defendant:

A.      For actual damages in an amount to be determined at trial that Cushman is entitled to recover as a result of Babcock's breaches of her Employment Agreement, tortious interference with prospective economic advantage, misappropriation of trade secrets, and unjust enrichment;

B.      Incidental and consequential damages as permitted by law;

20

C.      Exemplary damages pursuant to 18 U.S.C. §§ 1836(b)(3)(B)(i)(I)-(II) and (b)(3)(C), and Mont. Code Ann. § 30-14-404(1)-(2);

D.      For any costs and attorneys' fees allowed by law; and

E.      For injunctive relief, including, without limitation, an injunction compelling Babcock to comply with the terms of her Employment Agreement, enjoining Babcock from competing with Cushman for a period of three years from the date of her resignation, enjoining contact or interference with Cushman's current or potential customers for a period of three years from the date of her resignation, and compelling the immediate return of all client documents, correspondence, memoranda, notes, records, client lists, computer systems, programs and other documents, proprietary information, and all copies thereof, received or composed by Babcock which are related in any manner to the past, present, or anticipated business of Cushman or which contain any confidential information of Cushman.

F.      For an equitable accounting, disgorgement, forfeiture, and delivery to Cushman of all assets, income, profits, pecuniary benefits, and all gains or profits resulting from Babcock's unlawful conduct or her use of Cushman's resources;

G.      For applicable interest; and

H.      For all such other relief as this Court deems appropriate.

Dated this 13th day of May, 2024.

_/s/ Brianne C. McClafferty_
Brianne C. McClafferty
Kathryn M. Brautigam
Holland & Hart LLP
401 North 31st Street
Suite 1500
P.O. Box 639
Billings, MT 59103-0639

ATTORNEYS FOR PLAINTIFF

31817999_v8